IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| HEATHER COUCHMAN, et al. *Plaintiffs*, | § § § § | |
| vs. | § | CIVIL ACTION NO.: 5:22-cv-929-OLG |
| JACQUELYN CALLANEN, et al., *Defendants*. | § § § § | |

**DEFENDANTS' 12(b)(1) and 12(b)(6) MOTION TO DISMISS**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Now Come Defendants Bexar County Elections Administrator Jacquelyn Callanen, Bexar County Judge Nelson Wolff, and Bexar County Commissioners Rebeca Clay-Flores, Justin Rodriguez, Marialyn Barnard, and Tommy Calvert, and file this Motion to Dismiss pursuant to Federal Rules of Civil Procedure Rule 12(b)(1) and 12(b)(6).

## Introduction

1. Throughout their suit, Plaintiffs call into question the validity of the votes cast in the November 2020 general election and all elections in Bexar County going forward because the Election System and Software (ES&S) electronic voting system utilized in those elections was supposedly improperly certified by the State. (Docket No. 1-2, at pgs. 12-33). Plaintiffs then reference affidavits that allege the involvement of "foreign interference" to "manipulate the outcome of the 2020 election" and cast conclusory conspiratorial aspersions on the security of U.S. elections (Docket No. 1-2, pgs. 34-37). Plaintiffs seek extraordinary injunctive and declaratory relief to negate and supplant the political branches' decisions with respect to election-related matters. To that end, Plaintiffs seek an order that, among other things: 1) vacates and sets aside all allegedly

uncertified and illegal voting systems/equipment, software, and modifications (Docket No. 1-2, pg. 57); 2) implements a hand-marked paper ballot and hand counting system (Docket No. 1-2, pg. 57); 3) prohibits Defendants from utilizing an electronic voting system to both cast and tabulate votes "in any election indefinitely until proper investigations and reconciliation of the elections for 2020 general, 2021 special, and 2022 primaries are conducted" (Docket No. 1-2, pg. 3); and 4) orders Defendants to terminate "all employees, agents, and contractors shown to have knowledge of or acquiesced" in Bexar County's electronic voting system (Docket No. 1-2, pg. 58). In essence, Plaintiffs object to the use of electronic voting systems and prefer hand-counted, paper-ballot systems.

2. Defendants seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) because Plaintiffs have failed to establish standing and, as a result, this Court lacks subject matter jurisdiction. Constitutional standing requires particularized injury, not just a generalized grievance related to the November 3, 2020 election and subsequent elections in Bexar County.

3. Defendants further seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs have failed to state a claim upon which relief can be granted.

## 12(b)(1) Motion to Dismiss Standard

4. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc., v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted). "The burden of proof for a Rule 12(b)(1) motion to dismiss [for lack of subject-matter jurisdiction] is on the party asserting jurisdiction." *Ramming v. United States*, 281

F.3d 158, 161 (5th Cir. 2001); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). "[T]here is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court." *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1986). "A 'facial attack' on the complaint requires the court merely to look and see if plaintiff has sufficiently alleged a basis for subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980) (citing *Mortsensen v. First Federal Savings & Loan Ass'n*, 549 F.2d 884, 891 (3rd Cir. 1977)).

**Plaintiffs' claims are merely generalized grievances shared by all voters and citizens, and do not confer standing; therefore, this case should be dismissed for lack of subject matter jurisdiction.**

5. For Plaintiffs to have standing to litigate in this Court it is required that particularized individual injury to have occurred. *Lance v. Coffman*, 549 U.S. 437, 439 (2007). The injury cannot be generalized, affecting everyone in the same way. *Id*. "To have standing, the plaintiff must have personally suffered actual or threatened injury that can be fairly traced to the challenged action and is redressable by the courts." *Doe v. Tangipahoa Parish Sch. Bd.*, 494 F.3d 494, 496 (5th Cir. 2007). An injury is particularized if it affects the plaintiff in a personal and individual way. *Id*. It is not particularized if the relief sought no more directly or individually benefits Plaintiffs than it could the public at large. *Lance*, 549 U.S. at 442.

6. Courts in this Circuit refuse to adjudicate cases that raise only generalized grievances, which complain of a harm shared in substantially equal measure by all or a large class of citizens. *Pederson v. Louisiana State Univ.*, 213 F.3d 858, 869 (5th Cir. 2000). Here, Plaintiffs raise only generalized grievances that — were they legitimate —

would be shared by the public at large, and therefore lack standing to file suit against the Defendants.

7. Plaintiffs contend they have standing, relying on the Texas Supreme Court's decision in *Andrade v. NAACP of Austin*, 345 S.W.3d 1 (Tex. 2011). (Docket No. 1-2, pgs. 11-12). Plaintiffs' reliance on *Andrade* is misplaced, however, because this case actually demonstrates why they *do not* have standing. *Andrade* is quite similar to the instant case. In *Andrade*, the NAACP of Austin and several Travis County voters sued the Texas Secretary of State, alleging that her certification of an electronic voting machine, known as "eSlate," violated the Texas Election Code and the Texas Constitution. *Id.* at 6. "The voters assert[ed] that the Secretary's failure to require a contemporaneous paper record of an electronic vote violate[d] their statutory right to a recount and an audit, as well as Texas constitutional guarantees of equal protection, the purity of the ballot box, and the right of suffrage." *Id.* (citing TEX. CONST. art. I, § 3, art. VI, § 2(c), art. VI, § 4; and Tex. Elec. Code §§ 122.001, 211.01). The Texas Supreme Court concluded that "most of the voters' allegations involve generalized grievances about the lawfulness of government acts" and that "their remaining claims fail on their merits." *Id.* at 4.

8. Similar to the instant case, the *Andrade* plaintiffs argued that "failing to require a paper ballot undermines the framers' intent in drafting the numbering requirement [of TEX. CONST. art. VI, § 4]—a requirement they claim[ed] was intended to secure the integrity of the election process." *Id.* at 15. The Texas Supreme Court held that even "[a]ssuming, as we must, that these allegations are true, they amount only to a generalized grievance shared in substantially equal measure by all or a large class of citizens." *Id.* The *Andrade* plaintiffs further argued that "the lack of a contemporaneous paper record

neither provides a means of detecting and punishing fraud, nor preserves the purity of the ballot box." *Id.* at 16. The Texas Supreme Court responded that "we have held that the 'purity of the ballot box' provision requires only that *the Legislature* pass laws as necessary to deter fraud and protect ballot purity: 'This constitutional provision is addressed to the sound discretion of the Legislature' and '[i]t is not for the courts to attempt to direct what laws the Legislature shall enact to comply with it.'" *Id.* (emphasis in original) (quoting *Wood v. State ex rel. Lee*, 126 S.W.2d 4, 9 (Tex. 1939)).

9. Finally, the *Andrade* plaintiffs argued that "the Secretary's certification of the eSlate violate[d] the requirement that voting systems be capable of providing records from which the system's operation may be audited, and, therefore, the Secretary acted outside her authority in certifying the system." *Id.* at 17. The Texas Supreme Court again held that the plaintiffs had merely stated a generalized grievance, holding that "the voters have made no showing that the Secretary's certification harmed them other than as members of the general public. Accordingly, for much the same reason their article VI claims are barred, the voters lack standing to pursue their Election Code complaints." *Id.* Contrary to Plaintiffs' assertion, *Andrade* does not support they have standing.

10. While *Andrade* is a state-court case and therefore of merely persuasive authority (although the Texas Supreme Court explicitly looked to the "similar federal standing requirements for guidance," *id.* at 7), the Fifth Circuit has provided guidance on the injury-in-fact issue in election-related cases that does bind this Court. In *Hotze v. Hudspeth*, for example, the plaintiffs argued that "drive-thru voting hurt the 'integrity' of the election process," but the Court held that "[j]ust challenging the 'integrity' of the voting process is too general to suffice," 16 F.4th 1124; *see also Lance v. Coffman*, 549

U.S. 437, 442 (2007) (holding that an "alleged injury based solely on an allegation 'that the law . . . has not been followed' amounts to an 'undifferentiated, generalized grievance about the conduct of government' insufficient to establish standing.").

11. In accordance with the generalized-grievance principles set forth above, this Court should dismiss Plaintiffs' claims for lack of standing, as they make the same sort of vague allegations concerning "every citizen's interest in proper application of the Constitution and laws" which the Supreme Court has instructed does not meet the standing requirement. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573 (1992). A few illustrative passages from the Petition reveal the generalized nature of Plaintiffs' case:

> "The right to vote and know one's vote is fairly and accurately counted is foundational to our democracy. With this case, Petitioners seek to eliminate the black box voting system that has developed in this county and as used in this State. Texas voters no longer know whether their vote has been accurately tabulated or manipulated, and there can be no spot check within reasonable levels of confidence." (Docket No. 1-2, pg. 6);
>
> "This action is not an election contest. It is an action to bring transparency, fairness, honesty, and quality to Texas elections and to hold responsible those government officials who violate the equal protection and due process rights of Petitioners (and all Texas citizens) guaranteed by the Texas Constitution." (Docket No. 1-2, pg. 8);
>
> "Petitioners (and all Texas citizens) have a fundamental legal right to the clearly established principles of election equality, integrity, accurateness, honesty, and justice." (Docket No. 1-2, pg. 9);
>
> "The relief requested by Petitioners is the only way to eliminate the likelihood that Texas election results will be secretly changed by malicious programs hidden in Electronic Voting Systems." (Docket No. 1-2, pg. 40);
>
> "The public interest requires free, fair, and accurately counted elections in which the votes of all legal voters are counted equally and are not diluted by altered votes or phantom votes. This is also the constitutional right of Petitioners and all Texas voters." (Docket No. 1-2, pg. 45).

12. Voting is a right held in the possession of all citizens upon reaching the age of majority, thus rendering the Plaintiffs' Petition fatally devoid of a particularized individual injury upon which standing and subject-matter jurisdiction to survive this Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1). The Supreme Court "has repeatedly held, such a 'generalized grievance'—no matter how sincere—is insufficient to confer standing." *Hollingsworth v. Perry,* 570 U.S. 693, 694 (2013).

13. Further, Plaintiffs' claims are merely conjectural rather than actual and imminent. Future injury confers standing only if it is imminent, and not speculative. *Stringer v. Whitley*, 942 F.3d 715, 721 (5th Cir. 2019). For a future injury to be imminent, there must be a substantial risk that the injury will occur. *Id*. at 21. The highly conjectural and hypothetical nature of Plaintiffs' alleged injury-in-fact is apparent throughout the Petition. *See*, *e.g*., Docket No. 1-2, pg. 7 ("Would it dilute the expressed intent and effectiveness of Plaintiff(s)' voice if the [voting systems] are vulnerable to hacking, tampering, and algorithmic preprogramming?"), Docket No. 1-2, pg. 40 (discussing the "impending" violations of Plaintiffs' constitutional rights). Essentially, Plaintiffs claim that the Defendants have increased the risk of election interference in the future, but the Fifth Circuit has rejected the concept of probabilistic standing "based on a non-particularized increased risk—that is, an increased risk that equally affects the general public." *Shrimpers and Fishermen of RGV v. Tex. Comm'n on Envtl. Quality*, 968 F.3d 419, 424 (5th Cir. 2020). Because Plaintiffs have no imminent injury-in-fact, they lack standing.

14. Additionally, the Court lacks jurisdiction over Plaintiffs' claims because they present non-justiciable political questions. Under the political question doctrine, a claim

is non-justiciable if it would improperly require a court to review decisions exclusively within the purview of the political branches of government. *Kuwait Pearls Catering Co., WLL v. Kellogg Brown & Root Svcs., Inc.*, 853 F.3d 173, 178 (5th Cir. 2017). The political question doctrine is primarily a question of separation of powers. *Baker v. Carr*, 369 U.S. 186, 210 (1962).

15. There are six factors that indicate a political question, the presence of any one of which is sufficient to render a case non-justiciable. *Spectrum Stores, Inc. v. Citgo Petroleum Corp.*, 632 F.3d 938, 940 (5th Cir. 2011). Of those factors, the "dominant consideration" is whether the Constitution's text demonstrably commits an issue to a coordinate political branch. *Id.* at 950. That factor is dispositive, as the Constitution explicitly commits the determination of the time, place, and manner of conducting elections to the States. U.S. Const. art. I, § 4. Here, Plaintiffs challenge the Texas Legislature's policy determination to authorize the use of electronic voting machines. *See* Doc. 1-2, pg. 6-7 ("Experience has now shown the move to computerized voting in Texas was a mistake…[i]t is time to reverse this mistake."). Because the Constitution explicitly commits to the States the authority to determine the time, place, and manner of elections, U.S. Const. art. I, § 4, this case presents a non-justiciable political question and the Court must dismiss it.[1] *Spectrum*, 632 F.3d at 950.

16. For all these reasons, Plaintiffs have failed to establish standing for their claims, and this case should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

[1] Because this factor is sufficient to render the case non-justiciable, *Spectrum*, 632 F.3d at 49, the Court need not analyze the remaining factors.

## 12(b)(6) Motion to Dismiss Standard of Review

17. To avoid dismissal for failure to state a claim under Rule 12(b)(6), a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. While courts must accept all factual allegations as true, they "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

18. Plaintiffs summarize their constitutional questions in letters a through j on pages 7-8 of their 58-page Petition. (Docket No. 1-2, pgs. 7-8). These can be further consolidated into three basic claims—(1) were the electronic voting systems properly certified? (Docket No. 1-2, pg. 7, a-c); (2) do the election systems violate the Plaintiffs' rights if they are unreliable and vulnerable to hacking? (Docket No. 1-2, pgs. 7-8, d-e); and (3) are the persons elected when the challenged election system was in use acting with official authority? (Docket No. 1-2, pg. 8, g-h[2]). Plaintiffs then identify six specific counts for relief at pages 50 through 57 of their Petition. None of Plaintiffs' substantive allegations state a claim on which relief can be granted.

[2] There are three other sub-paragraphs on page 8 of Plaintiffs' Petition. However, they do not make claims that are distinct from the three general claims set out in the text above. Sub-paragraph f asks if the elections were negatively affected by officials' "modification" of the election laws. Presumably, the "modification" refers to the allegations set out in sub-paragraphs a-e and, thus, would not constitute a separate claim. Sub-paragraphs i and j relate to remedy rather than to substantive violations.

**Plaintiffs' accreditation and certification allegations do not state a cognizable federal or state claim; there is no private cause of action under the Help America Vote Act (HAVA).**

19. The allegations relating to accreditation and certification are generally set out in pages 12 through 37 of Plaintiffs' Petition. Plaintiffs complain that Defendants knowingly certified voting software, systems and modifications without a valid VSTL accreditation[3] via the EAC.[4] (Docket No. 1-2, pg. 31).

20. With regard to electronic voting systems, Plaintiffs' primary complaint is that all Defendants have engaged in conduct in violation of HAVA. (Docket No. 1-2, pgs. 37-40). However, HAVA does not provide for a private right of action. *Latinos for Trump v. Sessions*, No. 6-21-CV-00043-ADA, 2021 WL 272215, at *2 (W.D. Tex. Jan. 27, 2021); *see Tex. Voters Alliance v. Dallas Cty*., 495 F. Supp. 3d 441, 459 (E.D. Tex. 2020) ("Simply by its terms, HAVA does not create a private right of action."). Neither does HAVA support a private right of action under § 1983. *See Morales-Garza v. Lorenzo-Giguere*, 277 F.App'x 444, 446 (S.D. Tex. Sept. 11, 2007).

21. Instead, HAVA provides two enforcement mechanisms: (1) the attorney general may bring actions as may be necessary to carry out the uniform and nondiscriminatory election technology and administrative requirements; and (2) any person who believes there is a violation of HAVA, may file a complaint under state-based administrative complaint procedures. *Tex. Voters Alliance v. Dallas Cty*., 495 F. Supp. 3d 441, 459 (E.D.

[3] VSTLs are the national laboratories that test and certify voting systems. *See* https://www.eac.gov/voting-equipment/voting-system-test-laboratories-vstl

[4] The EAC was established by the Help America Vote Act of 2002 (HAVA). The EAC is an independent, bipartisan commission charged with developing guidance to meet HAVA requirements, adopting voluntary voting system guidelines, and serving as a national clearinghouse of information on election administration. The EAC also accredits testing laboratories and certifies voting systems. *See* https://www.eac.gov/about-the-useac

Tex. 2020). Moreover, the Supreme Court has held that private litigants are "not sufficiently likely to prevail on the question [as to] whether Congress authorized district courts to enforce HAVA when the plaintiffs are private litigants." *Brunner v. Ohio Republican Party*, 555 U.S. 5, 6 (2008).

22. Accordingly, Plaintiffs have failed to state claims under HAVA upon which relief may be granted.

**Plaintiffs' allegations that the current electronic voting system is vulnerable to hacking challenges the State's decision to approve and use a particular voting system and asks this Court to assume a legislative or executive, rather than a judicial role.**

23. Plaintiffs assert that the current election system violates their rights if it is unreliable and vulnerable to hacking. (Docket No. 1-2, pgs. 7-8, d-e). The Plaintiffs' basic claim is that they disagree with the Secretary of State's approval of the ES&S system and Bexar County's use of the approved system rather than hand-marked and hand-counted paper ballots. As previously discussed in this Motion, if a court were to entertain generalized grievances about how the law is enforced, rather than addressing actual or imminent injury that is particularized to the plaintiff, which is what these plaintiffs are asking the Court to do here, then it would assume a non-judicial role and would abandon its position in the constitution's separation of powers scheme and exceed its jurisdiction. *Supra*, ¶¶ 14-15.

**The Plaintiffs' issue regarding whether persons properly hold office if they were elected at elections using election systems the Plaintiffs contend were improperly certified does not pose a federal question.**

24. One of the issues raised by Plaintiffs is whether the "acting representative servants" were lawfully elected in the 2020 general election (as a result of "unlawful vote collection devices") and thus acting in their official capacity. (Docket No. 1-2, pg. 8). The question

of whether a person properly holds office is a question of state law. There are two ways to make such a challenge. One is by an election contest, which these plaintiffs do not have standing to bring. *See* Tex. Elec. Code § 232.002. Further, contests are subject to a very short limitations period, which has long since expired. *Id*., § 232.008.

25. The other way to determine if a person properly holds office is through the extraordinary remedy available through quo warranto. *E.g*., *State ex rel. Angelini v. Hardberger*, 932 S.W.2d 489, 490 (Tex. 1996); Tex. Civ. Prac. & Rem. Code § 66.001. That type of suit is an exclusive remedy and may be brought only in the name of the State of Texas. Tex. Civ. Prac. & Rem. Code § 66.002. *Orix Capital Markets, L.L.C. v. American Realty Trust, Inc*., 356 S.W.3d 748, 752, 754 (Tex. App. — Dallas 2011, pet. denied).

26. The question of the right of the person elected at elections using the systems the plaintiffs challenge here is not an issue within this Court's jurisdiction.

**Plaintiffs' claims under Count I and V fail because there is no private cause of action under 18 U.S.C. § 245**

27. In Counts I and V, Plaintiffs purportedly assert claims under 42 U.S.C. § 1983 for violations of 18 U.S.C. § 245. (Docket No. 1-2, pgs. 51-52, 55). Plaintiffs misconstrue the purpose of this statute. 18 U.S.C. § 245 is a civil rights statute that provides for federal prosecution of persons who intimidate or interfere with persons engaging in federally protected activities. *See* 18 U.S.C. 245(b); *Williams v. Tri-County Community Cent*., 452 F.2d 221, 223, fn. 3 (5th Cir. 1971). Further, it does not authorize a private right of action. *Id*.; *Merritt v. Franco*, No. 2:19-cv-175-Z-BR, 2020 WL 2454228 at *4 (N.D. Tex. April 8, 2020). Consequently, Plaintiffs' claims brought in Counts I and V fail to state a claim for which relief can be granted and should be dismissed.

**Plaintiffs' section 1983 claims that are premised on alleged violations of state law should be dismissed.**

28. Plaintiffs' Counts II cites Section 1983 as the vehicle through which they seek to bring purported violations of the Texas Constitution. (Docket No. 1-2, pgs. 52-53). "To state a section 1983 claim, 'a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.'" *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008) (quoting *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000)). Violations of state law are not actionable under 42 U.S.C. § 1983. *Id.*; *Williams v. Treen*, 671 F.2d 892, 900 (5th Cir. 1982); *Giovanni v. Lynn*, 48 F.3d 908, 912 (5th Cir. 1995). Here, Plaintiffs attempt to bring claims for purported violations of Article I, Sections 13 and 19 of the Texas Constitution under 42 U.S.C. § 1983. Such claims are not actionable under Section 1983 because they rest on allegations of the violation of rights secured by state law, not federal. Thus, there is no federal question presented and Count II fails to state a claim upon which relief can be granted.

**Plaintiffs' claims brought through 28 U.S.C. § 1331 should be dismissed because this statute does not create a private cause of action.**

29. Plaintiffs' Count III claim stems from purported violation of the Texas Constitution and cites 28 U.S.C. § 1331 as the vehicle through which Plaintiffs seek to bring the claim. (Docket No. 1-2, pgs. 53-54). But 28 U.S.C. § 1331 does not create a private cause of action and merely provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Plaintiffs' claim for purported violations of the Texas Constitution does not arise under the Constitution, laws, or treaties of the United States. Moreover, while 28 U.S.C. § 1331

establishes federal-question jurisdiction, it does not create a private cause of action itself. *Cf. Port Drum Co. v. Umphrey*, 852 F.2d 148, 149–50 (5th Cir. 1988) (noting that 28 U.S.C. § 1331 confers federal jurisdiction in actions "arising under the Constitution, laws, or treaties of the United States" but rejecting the argument that a federal rule of civil procedure could provide a substantive right upon which to base a claim in federal court, as a "contrary analysis would be circular and would defeat the concept of federal jurisdiction as limited").

**Plaintiffs' claims under 52 U.S.C. 20511(2)(a)(b), 52 U.S.C. § 10101, and 28 U.S.C. § 1943 should be dismissed because these statutes do not create a private cause of action.**

30. In Count IV, Plaintiffs cite 52 U.S.C. § 20511(2)(a)(b), 52 U.S.C. § 10101, 28 U.S.C. § 1943. (Docket No. 1-2, pgs. 54-55). But none of these statutes create a private civil cause of action. Section 20511 provides only for criminal penalties; it does not expressly provide for any civil remedies. 52 U.S.C. § 20511. That is unsurprising, as federal criminal statutes do not afford civil remedies. *Gill v. Texas*, 153 F.App'x 261, 262-64 (5th Cir. 2005) (per curiam). Thus, Section 20511 does not confer any substantive rights on Plaintiffs that would support a Section 1983 claim.

31. 52 U.S.C. § 10101 provides that "the Attorney General may institute for the United States . . . a civil action or other proper proceeding for preventive relief," but does not permit private rights of action. *Northeast Ohio Coalition for the Homeless v. Husted*, 837 F.3d 612, 630 (6th Cir. 2016).[5] The Sixth Circuit's holding is consistent with the rule of

[5] *But see Migliori v. Cohen*, 36 F.4th 153, 156–57 (3d Cir. 2022) (concluding that "private plaintiffs have a private right of action to enforce § 10101 under 42 U.S.C. § 1983"), pet. cert. filed. The Fifth Circuit has acknowledged this split, but has not joined either Circuit in its stance on the question. *Vote.Org v. Callanen*, 39 F.4th 297, 305 n.5 (5th Cir. 2022).

construction recognizing that "a private right of action cannot be found to be 'implied' unless the implication both is clear and is based on the text of the statute." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 317 (2012); *see also Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S.Ct. 1562, 1576 (U.S. 2022) (Kavanaugh, J., concurring) ("[T[he inquiry [should] focus on a background interpretive principle rooted in the Constitution's separation of powers," as "Congress, not this Court, creates new causes of action.") (citing *Alexander v. Sandoval*, 532 U.S. 275, 286-287 (2001)). Here, no such clear textual implication is present.

32. Even if Section 10101 did create a private cause of action, Plaintiffs have not alleged facts creating the reasonable inference that Defendants denied them the right to vote under any provision therein. In fact, Plaintiffs state they *did vote* in the November 2020 election. (Docket No. 1-2, pg. 3). In their Petition, Plaintiffs generally suggest that continuing to use computerized voting in Texas opens election results to manipulation. This is not a basis to impose criminal culpability—or, as Plaintiffs would erroneously have it—civil liability. And there is no such statute as 28 U.S.C. § 1943. For all these reasons, Plaintiffs' Count IV claim should be dismissed for failure to state a claim upon which relief can be granted.

**Plaintiffs' claims for declaratory relief should be dismissed because Plaintiffs have not established the existence of an underlying judicially remediable right.**

33. In Count VI, Plaintiffs seek a declaratory judgment under 28 U.S.C. § 2201 to enjoin the Defendants from utilizing electronic voting systems in forthcoming elections and from destroying the 2020 general election records.[6] (Docket No. 1-2, pgs. 56-57).

[6] Section 66.058 of the Texas Election Code requires the government to preserve election records "for at least 22 months after election day." Tex. Elec. Code § 66.058. After the expiration of 22

"The Declaratory Judgment Act is not an independent source of federal jurisdiction; the availability of such relief presupposes the existence of a judicially remediable right." *Schilling v. Rogers*, 363 U.S. 666, 677 (1960); *see also Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*, 99 F.3d 746, 752 n.3 (5th Cir. 1996). A request for a declaratory judgment is not a substantive claim. *Id*. The Declaratory Judgment Act, 28 U.S.C. § 2201, as a procedural statute, does not create an independent basis for district court jurisdiction, but rather provides an additional remedy where jurisdiction already exists. *Skelly Oil Co. v. Phillips Petroleum Co*., 339 U.S. 667, 671–72 (1950). "Thus, a plaintiff cannot use the Declaratory Judgment Act to create a private right of action where none exists." *Reid v. Aransas County*, 805 F.Supp.2d 322, 339 (S.D. Tex. 2011) (citation omitted). As Plaintiffs fail to state a claim upon which relief can be granted for Counts I–V, their Count VI necessarily also fails.

**CONCLUSION & PRAYER**

Because the Plaintiffs have suffered no injury that is particularized to them and different than might be experienced from the public at large, they have no standing to bring this suit. The Court is therefore without jurisdiction to hear it and should dismiss it pursuant to 12(b)(1). Additionally, the Court should dismiss this cause pursuant to Rule 12(b)(6) for the reasons set out in this motion as claims upon relief cannot be granted. Defendants Bexar County Elections Administrator Jacquelyn Callanen, Bexar County Judge Nelson Wolff, and Bexar County Commissioners Rebeca Clay-Flores, Justin Rodriguez, Marialyn Barnard, and Tommy Calvert respectfully request this Court to grant

months from the election day, section 1.013 of the Election Code permits the destruction of election records, unless there is a pending election contest, a criminal investigation, or criminal proceeding in connection with an election to which the records pertain is pending. *Id*. § 1.013.

their Rules 12(b)(1) and 12(b)(6) motions to dismiss, dismiss Plaintiffs' claims against them, and grant Defendants such other and further relief the Court deems appropriate under the circumstances.

Respectfully Submitted,

JOE GONZALES
Bexar County Criminal District Attorney

By: /s/ *Lisa V. Cubriel*

**LISA V. CUBRIEL**
State Bar No. 24045731
Lisa.Cubriel@bexar.org
**ROBERT W. PIATT III**
State Bar No. 24041692
Robert.Piatt@bexar.org
Assistant District Attorneys,
Civil Division
101 W. Nueva, 7th Floor
San Antonio, Texas 78205
Telephone: (210) 335-2142
Facsimile: (210) 335-2773
***Attorneys for Defendants***

**CERTIFICATE OF SERVICE**

I do hereby certify on the 2nd day of September 2022, I electronically filed Defendants' Motion to Dismiss with the Clerk of Court using the CM/ECF system and sent Defendants' Motion to Dismiss to all Plaintiffs via certified mail.

/s/ *Lisa V. Cubriel*

**LISA V. CUBRIEL**